IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ACSB ENTERTAINMENT LLC, and ACSB HOSPITALITY LLC, <br><br> *Plaintiffs,* <br><br> v. <br><br> SHOWBOAT PROPERTIES LLC, PREMIER LITE TOWER LLC, BART BLATSTEIN, and ACSB RESTAURANT LLC, <br><br> *Defendants.* | CIVIL ACTION <br> NO. 25-760 |

Pappert, J.                                                                                     October 15, 2025

## MEMORANDUM

In December of 2024, the parties to this case settled litigation in New Jersey, with Showboat Properties LLC, Premier Lite Tower LLC and ACSB Restaurants LLC (collectively "Claimants") agreeing to pay Respondents ACSB Entertainment LLC and ACSB Hospitality LLC $2,100,000.00, a proposed Agreed Arbitration Award.[1] The Settlement Agreement required the Claimants to pay the settlement amount in installments on or before specifically agreed-upon dates. Failure to meet any of the payment deadlines constituted a default, which Claimants had fifteen days to cure after notice. Bart Blatstein guaranteed payment of the total settlement amount and, in the event of failure to cure a default, agreed to pay the full settlement.

Claimants missed the deadline for their second payment, eventually making it after expiration of the cure period. Respondents filed a Complaint in Confession of

---

[1] The Court refers to the parties as "Claimants" and "Respondents," consistent with the Settlement Agreement and related documents upon which this suit is predicated.

1

Judgment and the Clerk of Court entered judgment against the Claimants in the amount of $1,600,000.00, the $2,100,000.00 settlement amount less the amounts Claimants paid.

Claimants now move to strike or open the judgment, arguing that Respondents failed to provide notice of the default or that the deadline for Claimants to cure it was not mandatory because nothing in the settlement agreement said that "time is of the essence." The Court denies the motion because Respondents complied with the notice provision, and Claimants disregarded an agreed-upon cure deadline, not one that is up to the court to divine.

I

A

To settle the New Jersey litigation, Claimants agreed to "cause payment to be made to Respondents in the total sum of" $2,100,000, pursuant to a negotiated installment payment schedule, with all required payments to be made by wire transfers to a designated account. (Compl. in Confession of J. at 39–40, ¶¶ 6.01, 6.02 and 6.03, Dkt. No. 1.)[2] Claimants paid the initial $250,000 contemporaneous with the Settlement Agreement's execution. (*Id.* ¶ 18.) But they did not make the second $250,000 payment on or before its December 31, 2024 due date. (*Id.* ¶ 19.)

---

[2] Paragraph 6.02 of the Settlement Agreement reads:
    Claimants shall make the following payments to Respondents:
- $250,000.00 on or before the Execution Date;
- $250,000.00 on or before December 31, 2024;
- $350,000.00 on or before June 30, 2025;
- $350,000.00 on or before December 30, 2025;
- $350,000.00 on or before June 30, 2026;
- $350,000.00 on or before December 30, 2026;
- $200,000.00 on or before June 30, 2027.

(Compl. in Confession of J. at 39, ¶ 6.02.)

On January 3, 2025, Respondents emailed the "Notice of Default and Demand for Immediate Payment" pursuant to paragraph 6.05 of the Settlement Agreement to Blatstein and his counsel, John Palladino, telling them they had fifteen days "from the date of delivery of this notice" to cure the default. (*Id.* ¶ 20–21; *Id.* at 73–74.) They also sent a copy of the letter to Blatstein and Palladino via FedEx Priority Overnight delivery service. (*Id.* ¶ 21; *Id.* at 95–102.) On January 21, 2025, Claimants "initiated a wire transfer of $250,000 for the second installment payment." (Defs.' Mot. to Strike or Open Confessed J. at 12, Dkt. No. 17.) Respondents received the payment on the morning of January 22, 2025. (Compl. in Confession of J. ¶ 24.) Respondents filed their Complaint in Confession of Judgment on February 12, 2025. (*Id.*)

B

The Settlement Agreement defines default as "any failure to pay an amount required under the payment schedule." (*Id.* at 35, ¶ 2.18.) Notices of default must be:

> [I]n writing sent by a reputable overnight delivery service or by email transmission provided that a simultaneous copy of the email transmission is sent via overnight delivery addressed to the party to be so notified . . . Any notice will be deemed delivered when received or receipt rejected.

(*Id.* at 40, ¶ 6.05.) The notices must be sent to Blatstein with copy to Palladino. (*Id.* at 40–41, ¶ 6.05.) Upon proper notice the agreement provides fifteen days to cure the default. (*Id.* at 40, ¶ 6.04.)

The Settlement Agreement includes a confession of judgment clause that, in the event of default, authorizes judgment to be "confess[ed] or enter[ed] against claimants and Blatstein in the amount of $2,100,000, less any payments made under this settlement agreement." (*Id.* at 10–11, ¶ 6.09.) The Settlement Agreement also incorporates a Guaranty Agreement in which Blatstein guarantees "prompt payment."

3

(*Id.* at 81, ¶ 1.) The Guaranty Agreement contains an acceleration clause which provides that Blatstein will "pay in full the amount" due under the Settlement Agreement in the event Claimants fail to cure a default. (*Id.* at 82, ¶ 3.) Blatstein also agreed to a confession of judgment clause in the Guaranty Agreement which authorizes the confession of judgment against him in the event of default. (*Id.* at 82, ¶ 4.) The Settlement Agreement incorporates a stand-alone Confession of Judgment Agreement that—for the third time—allows judgment to be confessed against the Claimants in the event of default. (*Id.* at 76–77.)

## II

### A

Judgment by confession is a product of state law that waives certain prejudgment procedures. *F.D.I.C. v. Deglau*, 207 F.3d 153, 159 (3d Cir. 2000). It allows a plaintiff to "obtain a judgment while skipping almost all the steps in an ordinary litigation." *Complete Bus. Sols. Grp., Inc. v. HMC, Inc.*, No. 19-2777, 2019 WL 4858273, at *2 (E.D. Pa. Oct. 2, 2019). A party can attack a confession of judgment by filing a motion to strike or open the judgment. *Deglau*, 207 F.3d at 167. Federal Rule of Civil Procedure 60(b) governs the procedure while state law governs the substance. *Id.*

A motion to strike "will be granted only if a fatal defect or irregularity appears on the face of the judgment." *Id.* Review is limited to the "complaint and the documents which contain confession of judgment clauses" filed by a plaintiff in obtaining a confession of judgment. *Sovereign Bank v. Catterton*, No. 03-CV-4954, 2003 WL 23162405, at *3 (E.D. Pa. Dec. 3, 2003) (quoting *Resol. Trust Corp. v. Copley Qu–*

*Wayne Assocs.*, 683 A.2d 269, 273 (Pa.1996)). Factual assertions in the complaint are accepted as true, but courts will open the judgment if facts are contested. *Id.*

A motion to open may be granted if a movant "act[s] promptly, allege[s] a meritorious defense, and produce[s] sufficient evidence in support of the defense that would require the issue to be submitted" to a jury. *U.S. Bank Nat'l Ass'n v. O'Neill,* No. 14-0447, 2014 WL 2439563, at *2 (E.D. Pa. May 29, 2014) (citations omitted). "Evidence of a meritorious defense must be 'clear, direct, precise and believable'" and is considered in the light most favorable to the movant. *Id.* (quoting *Germantown Sav. Bank v. Talacki*, 657 A.2d 1285, 1289 (Pa. Super. Ct. 1995)).

B

Courts resolve questions of contract interpretation by "giv[ing] effect to the intent of the contracting parties." *Ferrer v. Trs. of Univ. of Pa.*, 825 A.2d 591, 608 (Pa. 2002) (quoting *Murphy v. Duquesne Univ. of The Holy Ghost*, 777 A.2d 418 (Pa. 2001)). Courts derive contracting parties' intent from the whole instrument, taken together, and courts should assume the parties were not careless or ignorant in drafting. *Id.* Courts may consider negotiating parties' level of sophistication when interpreting their contracts. *John B. Conomos, Inc., v. Sun Co.,* 831 A.2d 696, 708 (Pa. Super. Ct. 2003). When a contract is unambiguous, its plain meaning will be enforced. *Ferrer,* 825 A.2d at 608 (quoting *Murphy,* 777 A.2d at 430).

III

Claimants contend that necessary conditions precedent under the Settlement Agreement—untimely payment and failure to cure after notice—were not met before Respondents confessed judgment against them. (Defs.' Mot. to Strike or Open

5

Confessed J. at 21.)  Claimants argue they did not receive notice consistent with paragraph 6.05 on January 3, 2025, and that even if they did, they had more than fifteen days to cure their default because the Settlement Agreement doesn't include a "time is of the essence" clause.  (*Id.* at 21–22.)

A

Claimants admit they knew when they received Respondents' email on the morning of Friday, January 3, 2025, that they had defaulted on the second installment payment.  (Tr. of Oral Arg. at 6:5–11, Dkt. No. 32.)  They also concede that a copy of the notice was sent via FedEx Priority Overnight delivery service the same day.  (*Id.* at 7:13, 58:10–12.)  But they argue Respondents did not comply with paragraph 6.05 of the Settlement Agreement because they did not pay a separate fee to ensure Saturday delivery, so Claimants did not receive the second copy of the default notice "via overnight delivery."  (*Id.* at 29:4–6; 29:24–25.)  Again, the Settlement Agreement requires only that the additional copy of the email transmission be sent "via overnight delivery" by a "reputable overnight delivery service," (Compl. in Confession of J. at 40, ¶ 6.05), something Claimants admit was done, (Tr. of Oral Arg. at 58:10–12.)  The notice provision, negotiated and flyspecked by sophisticated parties and their lawyers, does not contain additional requirements in the event the "priority overnight" copy of the notice is sent on a Friday.  And it doesn't say, as Claimants contend, that email is only an acceptable form of notice if the copy is sent "overnight [] for delivery the next day."  (*Id.* at 10:6–7.)  The parties contracted and agreed to provide and receive notice via email with a "copy of the email transmission" "sent via overnight delivery," and

6

Respondents did what they contracted to do.  (Compl. in Confession of J. at 40, ¶ 6.05; Tr. of Oral Arg. at 58:10–12; Compl. in Confession of J. at 95–102.)

Claimants acknowledge the purpose of the overnight copy in the email notice provision is to provide "something tangible . . . a hard copy of the document, and [so] you can see that [notice is] being effectuated."  (Tr. of Oral Arg. at 61:19–21.)  The Settlement Agreement provides that "any notice" is "deemed delivered when received."  (Compl. in Confession of J. at 40, ¶ 6.05.)  Blatstein and Palladino received the notice prescribed under paragraph 6.05 of the Settlement Agreement when they opened their email on the morning of January 3, 2025, not whenever their respective Federal Express Priority Overnight packages arrived.

The provision allowing notice to be sent by email with a separately delivered copy would be meaningless if the defaulting party could claim they didn't receive notice of a default until, at the earliest, the next day.  Sophisticated parties, whom Claimants admit drafted the settlement documents, don't choose their words carelessly.  (Tr. of Oral Arg. at 10:24.); *Ferrer*, 825 A.2d at 608.  And as Respondents correctly argue, contract provisions like the email notice option should not be "treated as surplusage or redundant if any reasonable meaning consistent with other parts of the agreement can be given to it."  *Wyoming Valley W. Sch. Dist. v. Nw. Sch. Dist.*, 695 A.2d 949, 953 (Pa. Commw. Ct. 1997).  On January 3, 2025, Respondents provided notice of default consistent with paragraph 6.05's plain meaning.

## B

Claimants also feel the payment deadlines and cure period are somewhat advisory because the Settlement Agreement lacks a "time is of the essence" provision.

7

(Tr. of Oral Arg. at 13:19–22.)  Such a phrase means that a party's failure to perform by a specified date may void that party's interest or rights in a contract.  *Tanenbaum v. Sears, Roebuck & Co.,* 401 A.2d 809, 814 (Pa. Super. Ct. 1979).  When time is not of the essence, "failure to perform on the date mentioned in a contract is not per se a breach which wholly destroys the contract."  *Bogojavlensky v. Logan,* 124 A.2d 412, 416 (Pa. Super. Ct. 1956).  But time is of the essence in a contract not just when those words appear but also when "circumstances clearly indicate that it was the intent of the parties."  *Id.* at 415.

Claimants argue that because the Settlement Agreement never states that "time is of the essence," the negotiated fifteen-day period to cure their default doesn't really mean fifteen days.[3]  (Tr. of Oral Arg. at 17:2–3.)  And they think specific dates on which the installment payments are due are just "time starter[s]."  (*Id.* at 67:7.)  As a result, they believe the Court, in its discretion, can determine how long they had to cure their default.  (*Id.* at 20:4–10.)  But, they argue, they did so when they "triggered payment" "reasonably near the cure date" on January 21, 2025.  (Defs.' Mot. to Strike or Open Confessed J. at 22; Tr. of Oral Arg. at 13:19.)  First of all, and as Claimants admit, the phrases "reasonably near" and "triggered payment" are not in the Settlement Agreement.  (Tr. of Oral Arg. at 13:13, 45:12–13.)  More to the point, their argument would render meaningless the negotiated and agreed upon specific payment dates and fifteen-day cure provision.  Indeed, Claimants ask the Court to read out of the Settlement Agreement the specified payment dates and default cure period and replace

---

[3]   Claimants also argue that the fifteen-day cure period should be extended to 18 days because the deadline fell on a Saturday followed by a Monday holiday.  (Tr. of Oral Arg. at 35:5.)  The Settlement Agreement gives the parties fifteen days to cure a default — not fifteen days excluding weekends and holidays.  (Compl. in Confession of J. at 40–41, ¶ 6.04.)

them, in essence, with "our payments are due whenever we feel like, and we can cure our defaults whenever a court says we should." Respondents never signed up for that.

Claimants rely on *James v. Silverstein*, 306 A.2d 910 (Pa. Super. Ct. 1973), in support of their position that, lacking an express time is of the essence clause, the fifteen-day default cure period is amorphous. (Tr. of Oral Arg. at 101:9.) But *James* reinforces that circumstances can imply that time is of the essence. 306 A.2d at 911. The trial court opened a confessed judgment precipitated by late payment for ownership shares of a racehorse where three of the racehorse's seven owners agreed to buy out the interests of the other four. There was no indication other than the payment due date that time was of the essence to any party. The appellate court found the trial court did not abuse its discretion because "as a general rule the time of performance is not strictly limited to that specified in a contract, unless it is stated in the contract, or circumstances show, that time is of the essence." *Id.* (citing *Bogojavlensky*, 124 A.2d 412).

Here, the Settlement Agreement's *raison d'etre* is for the Claimants to make the settlement payments on specific installment dates until the total settlement amount is paid off, with detailed procedures to accelerate payment in the event of default and a specific timeframe for curing defaults.[4] Numerous aspects of the Settlement Agreement show the parties agreed that timely installment payments were essential to the deal.

---

[4]     Nor do the other cases upon which Claimants rely help them. *See Linder v. SWEPI, LP*, 549 F. App'x, 104, 105, 108 (3d Cir. 2013) (where default was related to an ancillary "delay rental payment" in an oil and gas rights lease and the cure provision focused solely on the timeliness of bringing a lawsuit); *see also Gelley v. Park Pleasant, Inc.*, 494 F. App'x 187, 188, 189 (3d Cir. 2012) (considering a $7.8 million business purchase agreement that the seller attempted to void by virtue of a late deposit, where an extension of the deposit deadline was discussed by the parties); *Bogojavlensky*, 124 A.2d at 415 (finding time was not of the essence in a contract for the purchase of land and construction of a home where the contract included a time is of the essence clause with a blank space for a date and the parties failed to insert a date into the blank space).

The Agreement sets forth a payment schedule with specific dates and amounts, and circumstances such as a payment schedule with due dates and payment amounts in the body of an agreement can indicate that time is of the essence. *Gardiner v. City of Philadelphia*, No. 382 C.D. 2022, 2023 WL 8359632, at *8 (Pa. Commw. Ct. 2023) (table). The Agreement also contains three confession of judgment clauses, a "prompt payment" guarantee, a default notice clause, a cure period and an acceleration clause. The parties negotiated and agreed upon a specific schedule and related procedures for payments to be made in settlement of litigation. Claimants missed the December 31, 2024 payment date and failed to cure their default. Claimants want the Court to ignore the specific dates, deadlines and terms in the Settlement Agreement in favor of five words, "time is of the essence," that are not. The Court declines to do so.

IV

Claimants admit they were on notice of their default on January 3, 2025, and that they didn't tell their bank to wire the overdue payment until January 21, eighteen days later and three days beyond the cure period. Respondents properly confessed judgment against them, as Claimants authorized them to do. There is no defect on the face of that judgment and Claimants have failed to produce sufficient evidence of any defense to their conduct, much less a meritorious one.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.